We move to the fourth case this morning, Illinois v. City of Chicago Ms. Peel May it please the court, I'm Joel D'Alba, Counsel for the Fraternal Order of Police, Chicago Lodge No. 7. I'd like to reserve five minutes for rebuttal. On behalf of the 10,000 plus police officers represented by this lodge, I'd like to thank this court for granting the motion to take this briefing schedule on an expedited basis. The status of the matter is that the district court has held a fairness hearing last week. The court has taken the matter under advisement and has a pending motion by the lodge to stay issuing a decision until this court rules on the matter. What the FOP did not know in the nine months from September of 2017 until the end of May 2018, despite several assurances from the state that its collective bargaining agreement would not be conflicted, was that in fact that's what the state had planned to do. And so when the FOP first learned that the state was seeking to change provisions of hard-fought collective bargaining agreements, within a matter of a week, the FOP filed a motion to intervene. Did you see a memorandum of understanding prior to the proposed consent decree? I don't know exactly what your question is, Your Honor. We saw a memorandum of agreement between the state and various groups. They had no provisions about the collective bargaining agreement. They asked if we wanted to sign it and be in on it, and the answer was no. Of course, the lodge didn't want to give up its right to intervene. There were no relationship, or I shouldn't say it that way. It was not in any shape or form a proposed consent decree. I understand your question. That's exactly correct. In fact, there were several instances in which the lodge, going back to October, asked for copies of the drafts. And in fact, between March and May, the lodge went to the courtroom of Judge Dow, when there was a settlement conference to be held, and we asked permission of the courtroom deputy. Could we attend as observers? And the answer was from Judge Dow, yes, if the parties will agree. They locked us out of that meeting. We did not know what they were planning on doing. The question is, what part of your motion to intervene that the Fraternal Order of Police had been relying on assurances from the Attorney General's office to protect its interests? Your Honor, could you please repeat the question? I didn't hear the first part of it. I'm sorry. I'm wondering if you argued in your motion to intervene that the FOP had been relying on assurances from the Attorney General's office that the Attorney General's office would protect your interests. We noted in our reply brief a declaration from the lodge president, which referred to those very assurances. And we wrote four or five pages, including a reference to a case that this court decided called Reich, in which assurances were indicated. So the answer is, we didn't specifically say there were unusual circumstances that warranted this, but we did indicate that we had statements from the Attorney General in the form of the declaration that Mr. Graham submitted to the court. So the question, Your Honors, is, these assurances came from the State's highest legal officer, cloaked with the level of ethics and integrity that are attached to that offer. In fact, it was reasonable for the lodge. Would the FOP like to prevent the entry of a consent decree altogether? Your Honor, when that complaint was filed by the state, Mr. Graham made statements in the public indicating his opposition to it. That was, in fact, sort of a way of telling the state, we don't agree with it. It was a matter of telling the state, we don't like this. When the state, through the AG, contacted the lodge president to ask about would they sit down and talk about this, the answer was yes. And so those meetings started as early as September. And the assurances that came from the Attorney General were on October 6th of 17. The AG indicated some support for 22 issues that the lodge had said wanted to discuss. These were issues to improve the police department, to make Chicago safer. Those are indicated in docket number 81-4. On November 27th, the state said, we don't intend to get involved in discipline issues. But yet, in fact, the consent decree shows they are getting involved in discipline issues. On November 27th, the state also said, we don't want to deal with core mandatory matters, meaning matters of collective bargaining under the Illinois Public Labor Relations Act. On March 19th, the state said, we believe the city and the AG are not impacting your rights. On May 31st, the state said, we've been consistent. We don't believe these provisions, which we have drafted, conflict with the act. And so the AG, in a supplemental brief to the court after the reply briefs were filed, said, we note the FOP version of the interaction. Graham recounts several meetings in which the state consistently informed the FOP. It does not believe there are provisions we have drafted which conflict with the CPA. The state, in fact, was true to its word. So they're not disagreeing before the district court what we were talking about with respect to these. Yet they wouldn't let the state and the city agree that you should not be present? They locked us out, Your Honor. We tried twice before Judge Dow to sit in and only observe. We wanted to know what they were talking about. The answer was no. Did you see a copy of the proposed consent decree? Only when it was first published on July 27th, long after the intervention. The intervention was on June 6th. And what's important about that date is that the very next day, in the fourth joint status report filed by both parties, they advised the judge, we have many issues unresolved. They weren't even close to reaching an agreement at that point. And then they're now complaining about timeliness with respect to our claims. So the ---- Sotomayor, what language would you like to see added to the carve-out provision to further protect collective bargaining rights? Because it seems to explicitly guarantee that the consent decree will not override any bargain for rights. A specific statement that this consent decree will not be used in future collective bargaining negotiations to take away contract rights. A statement that says all statutory matters outside of the Illinois Public Labor Relations Act will not be infringed. Those are minimums. And then an additional language that says wherever there is something in the consent decree that involves a matter of wages, hours, and working conditions, that matter should be subject to bargaining. Those words are not there. With respect to these drafts, I've already indicated that these drafts were not given to us. We had no idea what they were talking about until we actually saw the document. These assurances that came from the AG were not considered by the district court. And contrary to what the AG said, there are four prongs in making a decision on timeliness under Rule 24a. The judge dealt with three. He didn't refer to unusual circumstances. This is an unusual circumstance. It was two days after the case was filed that both the city and the state jointly moved to a state of proceedings so they could negotiate a consent decree? Yes. Two days afterwards? Yes, sir. And we were never involved in any of those negotiations as we wanted to be. And the reason is we didn't want to waive a right to intervene. And, in fact, that's the prejudice factor that the judge didn't consider. Giving up the right to intervene means that we can't come to Your Honors with respect to matters that affect the collective bargaining agreement. That is a serious prejudice area. Now, these assurances presented a justification for the lodge not to have filed an intervention. Excuse me. Judge Rotemer has a question. I'm sorry, Judge Rotemer. That last question, because the way I read it, the Carvel provision specifies that nothing in the consent decree obligates the city or the unions to violate the terms of collective bargaining agreements, unless, of course, they're illegal, or waive any rights or obligations under the Public Relations Act. In other words, and there's an explicit guarantee. I know that in your brief, you have a number of hypothetical scenarios. Your Honor, the point was litigated before the judge, Judge Dow, in a series of comments. And we laid out in 50 pages precisely why the consent decree is not satisfactory. And they're particularly with respect to the non-Public Labor Relations Act statutes, the Peace Officer Disciplinary Act, the Body-Worn Camera Act, the Police Community Relations Act. Those are not covered by that language. So the point is, Your Honor, in May of 31, or approximately at that point, when the lodge first heard from confidential sources that the consent decree was going to interfere with the contract, that's when the clock started ticking. That's when the time for ---- Are you ready to discuss what specifically the confidential source conveyed to the FOP about the consent decree that was not already known? It's stated in Mr. Graham's affidavit as a confidential source saying that they are, in fact, seeking to change provisions of the collective bargaining agreement, which is contrary to what they had been told with the numerous assurances. With respect to ---- But that's broad, isn't it? Well, it's broad enough to tell the lodge you have something to worry about because your collective bargaining agreement is going to be infringed. It didn't go into the specific provisions of the collective bargaining agreement, but it certainly raised a set of alarms for the lodge to take action, and that's what it did. And that was not unreasonable in this context. Now, with respect to the question of prejudice, Your Honor, I want to point out that the judge used the wrong standard. We filed this case as a petition under Rule 24A. And 24A of the FRCP refers to four factors. The word prejudice is not one of those factors. Rule 24B.3 refers to, in exercising the discretion, the court must consider whether intervention will unduly delay or prejudice the adjudication. So when they talked about before the judge, and when the judge talked about nine months of discussions and meetings with experts and meetings with lawyers, and that is the prejudice they believed they were asserting, they were relying upon Rule 24B.3. That's not the applicable rule with respect to Rule 24A, motion to intervene. And that's really well thought out by the Fifth Circuit in two cases, one called Edwards and the other is called Stallworth. And so we think there are basically two prongs on the basis of which this court should reverse remand. Sotomayor, did the FIP raise the unusual circumstance argument in the district court? We raised it in the form of the reply brief by indicating the facts upon which the judge could decide that there were unusual circumstances, meaning assurances from the AG as to what was in fact not going to happen, which was your provisions of the collective bargaining agreement were not going to be affected. The state brought this case in light of the Department of Justice report under the prior administration, is that correct? It is. Is there any change in the Department of Justice position now? Yes. There is, in fact, a document that was filed by the Attorney General approximately a week before the fairness hearing began stating its objection to the consent decree, that there was no need for a consent decree, and that a general objection. It's in the docket. If Your Honor would object, would not object, I'll submit it to you after the hearing. I'd appreciate you doing that, within, say, 10 days. Thank you, Your Honor. I'd like to reserve the time for rebuttal. Thank you, counsel. I believe I'm at the end of my time, is that correct? Yes. I'll give you two more minutes. Thank you very much, Your Honor. Mr. Legner. Good morning, Your Honors. Counsel, may it please the court. Brett Legner on behalf of the state of Illinois. Your Honors, this court should affirm the district court's order denying FOP's petition to intervene. The district court did not abuse its substantial discretion in determining that FOP's motion was untimely. The state filed its highly publicized lawsuit against the city seeking to effectuate historic reform of longstanding police practices in August 2017. Despite the fact that it knew that the state sought a consent decree to change the many areas of police practice enumerated in the complaint, FOP waited nine months before seeking to intervene. During this time, the state and the city expended vast resources conducting discovery and negotiating a long and complex consent decree. At the same time, that consent decree does not negatively affect FOP's interests. Weighing these considerations, the district court did not abuse its discretion in finding FOP's intervention petition untimely. Turning to the first factor, FOP knew that its rights may be affected the day the lawsuit was filed in August 2017. FOP's story about when it learned its interests may be affected has changed continuously from the petition to intervene to the motion to stay if filed before it filed its reply in support of intervention to that reply and now on appeal. But the basic point is this. The FOP did not need to see what was actually in the consent decree. It did not need to see a completed decree to have reason to know that its interests may be affected. That's the clear holding of this court's decisions in Soka, Ogon, and Heartwood. The state's complaint gave FOP notice that its interests might be affected. The complaint is a very detailed document that enumerates many areas of police practice that the state claimed violated the law. Within a day, FOP's president made a public statement that there should be no consent decree. On August 31, 2017, the parties jointly filed a motion to stay proceedings in the district court. That was very quick. It was very quick, Your Honor. That's right. The parties recognized the need. No doubt had been discussing with the city prior to your joint filing, right? The parties recognized the need to effectuate a solution as soon as possible. They recognized the gravity of the problem. What specific value does the FOP have to pursue its rights under its collective bargaining agreement or other statute if it believes the consent decree violates those rights? Absolutely, Judge Rovner. The FOP has an extensive state administrative apparatus in which it can pursue its rights. The FOP could file an unfair labor practice claim with the Illinois Labor Relations Board. The FOP, pursuant to collective bargaining agreement, has a grievance arbitration procedure. So, for instance, if an FOP member were to be subject to discipline as a result of a provision that stems from the consent decree that they claim is illegal, that is something that they can grieve or arbitrate or otherwise take to the Labor Relations Board. So there is a specific... Is it time period for providing comments on the draft consent decree closed? The court actually extended the time for FOP to file their written comments to, I believe, next week. The court has received hundreds of written comments so far. They're on the district court's docket. And last week conducted the so-called live fairness hearing. So FOP does have some time still, according to the court order, to submit its written objections. So getting back to the... Yes, Judge Ruffin? Did the Attorney General assure the FOP that its interests would be protected during the negotiations for the consent decree? Not in the way that FOP claims, Your Honor. And I think you need to understand this argument not in isolation but in the context of the lawsuit and what was going on in the lawsuit. I would add that FOP's assurances argument is forfeited. This was not the basis for its timeliness argument and its petition to intervene. That's document 51 of the record. And at no point in that motion do they claim that the time for them to know when their interest was told was a result of assurances from the state. But back to your specific question, Judge Rovner, the state engaged in informal discussions with FOP about a number of issues that ultimately focused on a potential carve-out language. All the while, FOP knew that the state was engaging in this complex consent decree negotiation with the city. FOP knew that the state filed a complaint alleging numerous unlawful police practices. The state was the plaintiff. At no point did the state tell FOP that it will absolutely vindicate FOP's vision of its collective bargaining rights. Did the state tell FOP that it intends not to infringe on its collective bargaining rights in the consent decree? Yes. And, in fact, the state has not infringed on the collective bargaining rights because the carve-out provisions, as well as the people who care rule, made clear that that won't happen. That can't happen. But, so, Judge Rovner, the question about the assurances has to be read in the context that this is not a situation such as in Reich where parties that had legally aligned interests in litigation, one party said, we will defend your interests that we share in this case, and then they just didn't do it. Here, we have FOP choosing to engage in informal discussions with one of the parties who has sued, who is a plaintiff in a case seeking broad reforms of the police department, all the while that plaintiff, the state, was engaging in these negotiations with the city. It was not reasonable in those circumstances for the FOP to make the strategic decision to participate from the sidelines and then decide to intervene nine months later. It was a strategic choice. What was the rationale for keeping the FOP from just observing your negotiations with, or at least your appearance before the court, you and the city? Well, Your Honor, those negotiations are highly confidential at that point. Well, they're highly confidential, but they certainly involve the paternal order of police. They're highly confidential, but they certainly involve the paternal order of police. And the fraternal order of police had the opportunity to seek, to intervene, to get a seat at the table early on because it knew what this case was about the day the committee filed. In fact, in its July 2018 motion to stay that FOP filed in the district court, it said that it knew its interests would be affected once the January 2017 DOJ report came out. So it knew its interests were at play even six months before the lawsuit was actually filed by FOP's own admission. What impact did the current DOJ position have? The current DOJ position has no impact, Your Honor. The DOJ had made a report that was the basis for the state's lawsuit. The parties have negotiated and worked to implement solutions that go far beyond that. DOJ has currently stated that it doesn't think a consent decree is a proper way to resolve these issues. That's fine. It's an objecting voice to that regard. But beyond that, it's just not relevant. What's relevant is that the state has alleged that the longstanding policies, practices, customs of policing in the city have resulted in the use of excessive force against the city of Chicago's African-American and Latino communities in violation of the Constitution and violations of the laws. And the state has sought to vindicate those rights. And the city has worked through it. It's not something that the DOJ has chosen to... It's not a project the DOJ has chosen to take up. But that's irrelevant. That takes nothing away from the strength of the state's legal position, the importance of what the parties have worked out in this consent decree. And so beyond that, it's just not... This doesn't matter. The second... And so DOJ, or I'm sorry, FOP in this case, made a strategic choice to sit on the sidelines. In the Reed-Elf case, this court said that when a party knows about a lawsuit and is content to participate from the sidelines, they cannot then later seek to intervene. Especially, as this court explained in Soka Ogon, when a case, when a resolution of a case is within sight of the terminal, it is improper for a party to then seek to come into the case. The second factor, the second timeliness factor, is the prejudice to the existing parties. Now, I understand that counsel today made certain comments that prejudice is not the test. But for the second element, the second timeliness factor, it absolutely is. That's directly from the Soka Ogon case. The prejudice to the existing parties from the delay in seeking intervention. This, this court in Nisei Sanyo explained, is the most important factor. And this court in Soka Ogon stated that a party's attempt to intervene after the parties have, the existing parties have engaged in extensive settlement discussions and expended vast amounts of resources, deployed vast amounts of resources in getting close to that settlement, is improper and is prejudicial to the existing party's interest. That's exactly what happened in this case. All the while, turning to the third of the timeliness factors, the consent decree does not prejudice FOP's interests. FOP's interests are protected for a number of reasons. One, the carve-out provisions specifically protect their rights. This is paragraph 710 and 711 of the consent decree, which is document 107-1 of the record. Judge Schroeder, as you indicate, these, these, these provisions are very explicit. They state that the parties recognize that the city and the union have collective bargaining obligations. They recognize that there are collective bargaining agreements. And they specifically say that nothing in this consent decree will be construed to require any party to, to violate a provision of the collective bargaining agreement. If there is any conflict between a consent decree provision and the collective bargaining agreement, if it's a lawful collective bargaining agreement provision, then the, the, the collective bargaining agreement provision would control, and that this is where the last sentence of, of section 711, paragraph 711 comes in. In that case, in negotiating successor CBAs, the city is to use its best efforts to change the collective bargaining agreement so as, as necessary to implement the provisions of the consent decree. It doesn't say that the provisions of the consent decree trump the collective bargaining agreement, nor could it under this court's people who, who care rule. Because we have a consent decree being entered without the finding of liability, FOP is not a party, so the contracting parties have no ability, have no legal ability to change FOP's contract rights. That's why we have the best interest sentence at the end of paragraph 711. It protects FOP's rights, as does the people who care rule that provides that the parties can't contract away the rights of a third party in negotiating a settlement agreement. And additionally, and as we discussed before, Judge Rovner, FOP has other fora in which they can raise their claims. They have an administrative apparatus in Illinois that is designed to address whether there are violations of a collective bargaining agreement. That is not a reason to presume that they would be prejudiced by the entry of this consent decree, such that would allow them to intervene at this late point in the process. In fact, the district judge, as he noted in his opinion, said that he must satisfy himself that the decree is consistent with the Constitution and the laws. It does not undermine the rightful interests of third parties and appropriate commitment of the court's limits of resource. In other words, he has to make that assurance as well, right? Yes. And Judge Dowd, the district court judge, is making those assurances. Turning to them briefly to the fourth factor, which is the unusual circumstances factor. I needn't spend much time on this because it was forfeited. At no point in the petition to intervene, nor in the reply, did FOP ever claim that there were unusual circumstances here. They never invoked that element. It is not the case that this factor must be addressed in every intervention case where a party asking leave doesn't try to ask that it be applied. The unusual circumstances element is similar to a mitigating or aggravated circumstances. Well, there are unusual circumstances in this case. I mean, simply the difference between the two Department of Justice positions, the fact that Department of Justice in other cases has gotten directly involved in it. This is an unusual case. The state of Illinois suing the city is an unusual situation. It is an unusual case, certainly. And the allegations of the complaint entail an unusual level of possible harm. But those are unusual circumstances that justified delaying the attempt to intervene. That's what the unusual circumstances are supposed to be. And FOP made no argument in its petition or in its reply that such unusual circumstances do, in fact, attain here. Your Honors, I see that I am out of time. If you have no further questions, thank you very much for your time. Thank you, Counsel. Counsel, you have two minutes for a rebuttal. This Court has been very consistent. All four factors have to be considered in an intervention under Rule 24A. With respect to whether there are other state agencies where we can file an unfair labor practice, there are no unfair labor practices that can be filed with respect to a violation of a consent decree. We gave you a case called Commodity Future Trading Commission where this Court has said other factors are not an issue. Graham's affidavit was sworn. They never contested it. They even told the Court they don't disagree with it. So to say we waived anything is incorrect. They're the ones who waived it. They never went to the Court to say, in their supplemental brief, disregard this, strike it, give it no consideration. That's a waiver in our issue. He says we don't have any loss with respect to this matter. That's our decision to make, Your Honor. We have numerous collective bargaining agreement provisions that are at issue. We have other statutes that are at issue that if the judge doesn't correctly deal with this, our rights to appeal are gone. That's our prejudice, which the judge did not consider. With respect to sitting on the sidelines, for nine months we met with them. We talked with them. We gave them provisions. We have 22 points of discussion. We gave them in September and October. That's not sitting on the sidelines. That's not having our head in the sand. We wanted to deal with them for the purpose of having something that made sense. Even though on the outside we were telling people in the public we opposed, look at what we were doing on the inside. We met with them to try and reach an agreement. That carve-out is the basis of an agreement. It doesn't go far enough, Judge Rover, in our opinion. But more important than that, they locked us out. They didn't let us have a full day. Now, there's one important case that the judge relied upon, that they relied upon, called Ragsdale. In Ragsdale, this court said there was an intervention and that the parties were, in this case, it was the Indiana PRG. The court said they knew about this matter, and therefore they did sit on the sidelines. That's not this case. The court also said we don't know what, there's no time limit here in this case. There's no indication as to when the Indiana PRG knew about the case, and there were no unusual circumstances. In our case, we were not on the sidelines. We didn't know what they were doing. And what's even more amazing, they tell the world they have a consent decree built on transparency. So the world will know everything a police officer does from the moment he leaves his car to the moment he takes an enforcement action. They didn't tell us transparency for nine months. There wasn't one word to us that they were going to impact a collective bargaining agreement. They shut us out. That's not transparency. Our view is they waived their argument with respect to the reply brief. Everybody gets to file a reply brief to comment on something that somebody said. That's exactly what we did. We gave you some cases to indicate that there's nothing wrong with what we did in the reply brief. They made their case by supplemental brief. They didn't say a word to the judge that we shouldn't have a right to make the claims we made about this being improper. Thank you, Your Honor. Thank you, counsel. Thanks to both counsel and the cases taken under advisement.